UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ronald S. Mills, et al.,                                                Case No. 3:20-cv-1141

                Plaintiffs

    v.                                                                              MEMORANDUM OPINION
                                                                                    AND ORDER

FIS 2 LLC, et al.,

                Defendants

## I.    INTRODUCTION & BACKGROUND

Fort Industry Square is a block of adjoining buildings located at 114 through 152 North Summit Street in downtown Toledo, Ohio. Some of the buildings in this row date back to the late 1800s. Prior to the summer of 2016, Plaintiffs owned a number of the buildings in this row.

In July 2016, Plaintiffs Ronald and Judy Mills[1] and Defendant ProMedica Health System, Inc. executed a Real Estate Purchase Agreement wherein ProMedica agreed to purchase those buildings owned by Plaintiffs. (Doc. No. 23 at 6; Doc. No. 43-1 at 1). Pursuant to the Purchase Agreement, Plaintiffs agreed to convey "marketable title to the Property in fee simple" for the Purchase Price of $4.0 million. (Doc. No. 43-1 at 1). But the Purchase Agreement also contained an additional term requiring ProMedica to

> execute and deliver to [the Mills] at Closing a "Premises Reservation Agreement" which reserves to the Mills Family (being Ronald S. Mills and Judy A. Mills, and their children as of the date of the Closing), Suites 415 and 416, and any associated roof decks (the "Reserved Premises" which includes reasonable right to access through and use of the common areas of the Property) for a LIFE ESTATE TERM of the

---

[1] The two executed the Purchase Agreement both "individually" and "as trustees of the Mills Family Trust." (Doc. No. 43-1 at 7).

> life of the last survivor of the Mills Family, for the use by the Mills Family, and their successors and assigns, for office and/or residential purposes as desired by the Mills Family in the Mills Family's discretion, subject to applicable laws and regulations and regulations applicable to residents/occupants of the building generally, rent free during the Term, inclusive of all utilities (in reasonable quantities) and real estate taxes, with the Mills Family responsible only for interior improvements and maintenance. … The Reserved Premises may not be available during renovation of the Property and/or if the Property becomes uninhabitable due to casualty or other force majeure event.

(*Id.* at 5). This Premises Reservation Agreement was executed and delivered to the Mills at the Closing on or about August 19, 2016. (Doc. No. 43-3).

After acquiring the Property, Defendants sought to renovate the Fort Industry Square Property, including those buildings once owned by Plaintiffs. Because of the historic nature of the Property, Defendants filed applications for historic rehabilitation tax credits available through the State of Ohio's competitive historic tax credit program. Defendants' applications were successful. Pursuant to the terms of the program, applicants do not receive the tax credit certificates until after the rehabilitation work has been completed.

After beginning the renovation work on the Property, Defendants' counsel sent a letter to Plaintiffs' counsel on May 21, 2020, notifying Plaintiffs that the Reserved Premises would be inaccessible for an unknown time period beginning five days after the date of the letter and ending when the renovation was complete. (Doc. No. 23-1 at 2-3). Defendants' counsel also advised that, as part of the renovation plan, the Reserved Premises would "be entirely gutted, reconfigured and rebuilt into code compliant, legally occupiable and leasable residential units." (*Id.*).

In response to that letter, Plaintiffs filed this action seeking to prevent Defendants from gutting the Premises. They also sought to quiet title through a declaration "that the Mills Family owns a life estate in the Reserved Premises and, based upon that interest, that the Mills Family is entitled to an equitable portion of the tax credits received by Defendants on account of the Reserved Premises." (*Id.* at 13). In turn, the Mills also asserted a claim of unjust enrichment alleging

2

that "[a]s an owner of a freehold estate and/or a possessory interest in the Reserved Premises, the Mills Family has conferred upon Defendants a benefit in the form of the tax credits received by Defendants on account of the Reserved Premises, and Defendants have accepted and retained this benefit despite knowing that the portion of the tax credits attributable to the Reserved Premises rightfully belong to the Mills Family." (*Id.* at 14).

Defendants move to dismiss "with prejudice all claims in the Second Amended Complaint seeking relief related to the historic rehabilitation tax credits [HRTCs] granted to defendants in connection with the renovation of Fort Industry Square." (Doc. No. 43). Relatedly, Defendants also move to amend their Answer to state updated information regarding the HRTCs they have for which they had applied and received. (Doc. No. 65). Plaintiffs oppose both motions. (Doc. Nos. 47, 68, & 69). After briefing was complete, I held a hearing and granted both of Defendants' motions on the record. I now issue this Memorandum Opinion and Order further explaining my decision.

## II.     STANDARD

### A.     Motion to Amend

Rule 15 provides that a party may amend its pleadings once as a matter of course within 21 days of serving the pleading or, if a responsive pleading is required, 21 days after service of a responsive pleading. Fed. R. Civ. Pro. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2).

"In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman*

3

*v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989).

"Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973). Delay alone is not enough to permit a court to deny a motion to amend, regardless of how long a party has delayed. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 888 (6th Cir. 1990) (A party opposing a motion to amend must offer "at least some significant showing of prejudice.") (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986) (per curiam)).

**B.     Motion to Dismiss**

Rule 12(b)(6) provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 570 (2007)). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action").

The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

4

### III.  DISCUSSION

HRTCs are available through both state and federal law.  The Internal Revenue Code provides that a taxpayer may claim federal HRTCs in "the amount equal to 20 percent of the qualified rehabilitation expenditures [QREs] with respect to the qualified rehabilitated building."  26 U.S.C. § 47(a)(2).  QREs are "incurred by the taxpayer" "in connection with the rehabilitation of a qualified rehabilitated building."  26 C.F.R. § 1.48-12(c)(1); 26 U.S.C. § 47(c)(2)(A)(ii).  To be considered a "QRE," the "rehabilitation of a qualified rehabilitated building" must be a "certified rehabilitation," meaning the rehabilitation must be "of a certified historic structure which the Secretary of the Interior has certified to the Secretary as being consistent with the historic character of such property or the district in which such property is located."  26 U.S.C. §§ 47(c)(2)(B)(iv) & (c)(2)(C).  As such, federal HRTCs may be claimed by any taxpayer after completion of a "certified rehabilitation."

Ohio offers a similar historic rehabilitation tax credit to "[t]he owner or qualified lessee of an historic building[, who] may apply to the director of development services for a rehabilitation tax credit certificate for qualified rehabilitation expenditures paid or incurred by such owner or qualified lessee after April 4, 2007, for rehabilitation of an historic building."[2]  O.R.C. § 149.311(B).  Unlike the federal program, those seeking an Ohio HRTCs must compete for limited available funding.  To be considered for an HRTC certificate, an applicant must show "the rehabilitation will satisfy standards prescribed by the United States secretary of the interior…before the applicant begins the physical rehabilitation of the historic building." O.R.C. § 149.311(C).  This is only one of the criteria for a successful application.  *Id.*  Only those applicants whose application is approved may receive an HRTC certificate after the rehabilitation is completed.  O.R.C. § 149.311(D)(3).

---

[2] The "'Owner' of an historic building means a person holding the fee simple interest in the building." O.R.C. § 149.311(A)(3).

5

To help fund the renovation of Fort Industry Square, Defendants applied for the competitive Ohio HRTCs.[3] In their applications, they included the Reserved Premises within the scope of rehabilitation.[4] At the time Defendants filed their Answer to Plaintiffs' Second Amended Complaint, their applications had been approved, but they had not received any state or federal HRTCs because the rehabilitation work was not complete. Accordingly, they stated the same in their Answer. (Doc. No. 44 at 14-15).

After filing their Answer, Defendants amended their applications for Ohio HRTCs to remove the Reserved Premises from the scope of the approved project because no work would be performed in the Reserved Premises and, therefore, no QREs would be incurred. (Doc. Nos. 66-1 & 66-2). This amendment was approved, thus removing the Reserved Premises from the approved project. (Doc. Nos. 66-5, 66-6, 66-7, & 66-8). Subsequently, the rehabilitation work was completed, and Defendants were awarded an Ohio HRTC certificate. (Doc. No. 66-10). Defendants represent that they are now eligible for federal HRTCs, as well. (Doc. No. 65-2 at 14-15).

Because of the changed circumstances, Defendants seek to amend their Answer to reflect the current state of the award and receipt of HRTCs. (Doc. No. 65). Plaintiffs oppose the proposed amendment on grounds of timeliness. (Doc. No. 69). But delay alone is not enough permit a court to deny a motion to amend; a party opposing a motion to amend must offer "'at least some significant showing of prejudice.'" *Dana Corp*, 900 F.2d at 888 (quoting *Moore*, 790 F.2d at 562). Plaintiffs have not alleged they would suffer any prejudice. Therefore, Defendants may amend their Answer to state the updated HRTC information.

---

[3] The renovation of Fort Industry Square was divided into two "Phases." Phase 1 included 136 through 152 North Summit Street, and Phase 2 included 114 through 132 North Summit Street. (Doc. No. 65 at 2). Defendant FIS 1 LLC filed an application for the Phase 1 property, and Defendant FIS 2 LLC filed an application for the Phase 2 property. (*See* Doc. Nos. 66-1 & 66-2).
[4] The Reserved Premises is located on the fourth floor of 132 North Summit Street (Phase 2) and 136-138 North Summit Street (Phase 1). (Doc. No. 66-1 at 2; Doc. No. 66-2 at 2).

6

Defendants also offer these new facts in support of their motion to dismiss Plaintiffs' claim to state and federal HRTCs granted to Defendants. Plaintiffs have consistently claimed they are entitled to a portion of the HRTCs because they own a life estate in the Reserved Premises. (Doc. Nos. 47 & 68). Defendants dispute Plaintiffs' claim to ownership and argue that, regardless of any ownership interest, Plaintiffs are not entitled to claim any HRTCs because: (1) Plaintiffs have incurred no QREs; and (2) no HRTCs were granted or received in connection with the Reserved Premises since they were removed from the scope of the approved project. (Doc. Nos. 43, 48, & 66). Plaintiffs do not challenge Defendants' final two assertions. Instead, Plaintiffs maintain they own the Reserved Premises as a life estate and therefore, regardless of the amendment to the HRTC application made after the litigation commenced, "[e]quity requires that Plaintiffs be compensated for Defendants['] wrongful use of the Reserved Premises in their applications that resulted in an award of the tax credits." (Doc. No. 68 at 4).

Plaintiffs' claim to ownership – and in turn the HRTCs – seemingly stems from the use of the phrase "life estate term" in both the Purchase Agreement and the Premises Reservation Agreement. But contrary to Plaintiffs' assertion, neither the Purchase Agreement nor the Premises Reservation Agreement granted Plaintiffs a life estate ownership interest in the Reserved Premises. Instead, these Agreements used the phrase "life estate term" to describe the length of time Plaintiffs would possess the lease to the Reserved Premises.

Pursuant to the Purchase Agreement, Plaintiffs agreed to convey "marketable title to the Property in fee simple." (Doc. No. 43-1 at 1). In exchange, Defendants agreed to pay Plaintiffs the $4.0 million Purchase Price and execute a "Premises Reservation Agreement" reserving the Reserved Premises for Plaintiffs to use "rent free" "for a LIFE ESTATE TERM."[5] (*Id.* at 5). That is, at

---

[5] The Reserved Premises term is only one of the additional terms stated in the Purchase Agreement. Because the other terms are not relevant to the present issue, I need not detail those other terms at this time.

7

Closing, Defendants would hold the fee simple interest in the Property and Plaintiffs would hold a rent-free leasehold interest in the Reserved Premises, pursuant to the Premises Reservation Agreement codifying the lease arrangement of the Reserved Premises for a life estate *term*.

The Premises Reservation Agreement that was executed and delivered to Plaintiffs acknowledged the same, stating that "as a condition to the delivery of the Deed," Plaintiffs "requested" that Defendants reserve for Plaintiffs the Reserved Premises "for a life estate term." (Doc. No. 43-3 at 1). Defendants honored that request, "reserve[ing] the Reserved Premises for [Plaintiffs] for [their] exclusive use and occupancy" for the "life estate term." (*Id.*). In turn, Plaintiffs "t[ook] and accept[ed] the Reserved Premises" from Defendants for that purpose – to "exclusive[ly] use and occup[y]" the Reserved Premises rent free for the "life estate term." (*Id.*). The Premises Reservation Agreement did not state that Plaintiffs would "own" the Reserved Premises for this "life estate term."

Because Plaintiffs' claims to the HRTCs are based solely on their alleged ownership interest, and because I have concluded Plaintiffs possessed no such ownership interest, Plaintiffs' claims to the HRTCs received by Defendants are dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss and to amend are granted. (Doc. Nos. 43 & 65). Defendants shall file their First Amended Answer within one week of this Order.

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge